IN THE CIRCUIT COURT OF JACKSON COUNTY
AT KANSAS CITY

| | |
|---|---|
| ENRIQUE GUTIERREZ<br>5809 Kenwood Avenue<br>Kansas City Mo 64110<br><br>    Plaintiff,<br><br>v.<br><br>SECURITAS SECURITY SERVICES USA<br>2345 Grand Boulevard Suite 1700<br>Kansas City MO 64108<br>**SERVE REGISTERED AGENT:**<br> National Registered Agents, Inc.<br> 120 South Central Avenue<br> Clayton MO 63105<br><br>    Defendant. | )<br>)<br>)<br>)<br>) Case No.: _____<br>)<br>)<br>) Division No.: _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### PETITION

COMES NOW Plaintiff, by and through counsel, and for his Petition against Defendant, alleges and states as follows:

### PARTIES

1. Plaintiff resides in Kansas City, Missouri at the address set forth above.

2. Defendant Securitas Security Services USA, Inc. is a foreign corporation conducting business in Missouri at the address set forth above. At all times relevant herein, Defendant Securitas Security Services employed Plaintiff.

### JURISDICTION AND VENUE

3. Plaintiff's cause of action against Defendant for wrongful termination in violation of public policy is based on Missouri law.

4. Jurisdiction and venue are proper in this Court because the actions complained of occurred in Jackson County, Missouri.

1

Exhibit A

## FACTS COMMON TO ALL COUNTS

5. Defendant engages in the business of providing security services and guarding to other entities.

6. Plaintiff began his employment with Defendant in November 2005.

7. Plaintiff performed his duties in a satisfactory manner and within a few months was promoted to the position of supervisor with an increase in pay of $1.50 per hour.

8. In August 2006 Plaintiff was assigned to work at Procter & Gamble, Gate 8.

9. While Plaintiff was employed as a security officer, Defendant knew that Plaintiff had a degree in chemical engineering. Defendant tasked Plaintiff with improving the operations of shipping and receiving of Gate 8 where tankers carrying chemicals traveled in and out of the Procter & Gamble site.

10. Plaintiff immediately set about making important changes to the processes at Gate 8, implementing a new control system with daily tanker inventory log, and seeking other changes to improve safety for employees of Defendant, Procter & Gamble, and drivers of tankers.

11. In April 2007 Plaintiff submitted a report to Defendant advising that while he is being paid as a security guard he is performing important aspects of logistics and operations for that plant.

12. In July 2008 Plaintiff prepared and submitted a detailed report regarding the deficiencies at Gate 8, including, but not limited to, the following:

    a. the gate is a "push and pull" system that is corroded and is extremely difficult to open and close and has caused some officers injury when

trying to open or close the gate;

    b.    a huge hole at the entrance of Gate 8 which is dangerous to the tankers entering and exiting the gate;

    c.    that the only restroom for the guards at Gate 8 and drivers of tankers to use is a filthy port-a-potty;

    d.    The scale used by tankers has a drop off on one side of approximately 5 inches and a drop on the other side of approximately 1.5 feet. Several tankers have fallen off that side of the scale, this condition could result in a tanker tipping over.

13.    In September 2009 Plaintiff submitted a written report to his superiors advising of the danger associated with the close proximity between the guard shack and weigh scales.

14.    On October 12, 2011 a Procter & Gamble employee visited Plaintiff at Gate 8. She asked Plaintiff what the foul odor was and he directed her to the port-a-pot. The employee took photographs of the deplorable conditions of the port-a-pot and sent them to her supervisor with an email describing the horrible conditions of the port-a-pot and her shock that contract employees were required to use that type of facility.

15.    In April 2013 Plaintiff submitted a written report to his new manager that included, but was not limited to, the following issues:

    a.    the gate is a "push and pull" system that is corroded and is extremely difficult to open and close and has caused some officers injury when trying to open or close the gate;

3

Electronically Filed - Jackson - Kansas City - May 17, 2016 - 11:15 AM

    b.    a huge hole at the entrance of Gate 8 which is dangerous to the tankers entering and exiting the gate;

    c.    that the only restroom for the guards at Gate 8 and drivers of tankers to use is a filthy port-a-potty;

    d.    The scale used by tankers has a drop off on one side and several tankers have fallen off that side of the scale, this condition could result in a tanker tipping over.

16.    On August 27, 2013 Plaintiff submitted an incident report to his superiors advising that a tanker loaded with sulfuric acid had fallen off the scales and was in danger of turning over. Ramps had to be constructed to get the trailer back on the scale surface.

17.    On September 24, 2013 a team leader at Procter & Gamble emailed several of Defendant's employees commending Plaintiff's performance which he described as "above and beyond."

18.    On June 13, 2014 Plaintiff submitted an incident report to his superiors advising that a driver had become confrontational, that the lock to the Gate 8 guard building is broken, and that guards should be able to open Gate 8 from inside the guard building.

19.    On February 2, 2015 Plaintiff submitted a written report to his superior advising that he had been trying to obtain improvements at Gate 8 since 2008.

20.    On February 3, 2015 Plaintiff's superior asked Plaintiff to prepare an overview of his job duties at Gate 8. Plaintiff complied.

21.    On February 23, 2015 Plaintiff advised his superior that it is not the job duty of security officers to check the tanker temperatures.

4

Electronically Filed - Jackson - Kansas City - May 17, 2016 - 11:15 AM

22. On February 22, 2015 Plaintiff emailed the Securitas Manager at Procter & Gamble about his concerns at Gate 8, the same concerns he had been raising since 2006.

23. On February 24, 2015 Plaintiff emailed the Securitas Manager at Procter & Gamble and several other employees of Procter & Gamble advising that he would be leaving his employment with Defendant based on the various concerns he had raised about Gate 8 since 2006. Thereafter the Securitas Manager at and several Procter & Gamble employees came to speak to Plaintiff in person and stating that the issues will be addressed.

24. On February 24, 2015 Plaintiff received an email from a high ranking manager at Procter & Gamble asking Plaintiff to send his concerns directly to that manager.

25. On March 2, 2015 Plaintiff sent his response to the Procter & Gamble manager, and one of Defendant's managers, describing the working conditions at Gate 8, including no running water to wash hands, no bathroom in the guard shack, difficulty in opening Gate 8, and other concerns. Although the report had been requested from Procter & Gamble, Plaintiff received no response to his email from either Defendant or Procter & Gamble.

26. On March 17, 2015 Plaintiff submitted a written complaint to OSHA that included, but is not limited to, the following conditions and concerns:

   a. No running water to wash hands;

   b. No indoor bathroom at the guard building;

   c. Lot conditions that caused a tanker to split in the middle;

   d. Gate system that is corroded and difficult to open.

27. Defendant was notified of the OSHA complaint by letter of March 25, 2015 that outlined the concerns and applicable code sections.

28. Defendant answered the letter by stating that there is a water dispenser for rehydration, a portable restroom facility, the gate is being evaluated, and the guard building is 9 feet from the scales.

29. Plaintiff was called to a meeting on April 13, 2015. During the meeting he expressed his concern about lack of running water and proper bathroom facilities. He was told that those items are not required. He was then presented with a counseling and corrective action disciplinary form based on communications that Plaintiff sent to the Procter & Gamble manager and Defendant's account manager.

30. Following Plaintiff's internal complaint to Defendant and complaint to OSHA, Plaintiff began to experience retaliation including, but not limited to, the following:

   a. The port-a-pot was moved even closer to the Gate 8 guard shack, thereby moving the offensive odor and conditions that much closer to Plaintiff's work area.

   b. An outside water hydrant was installed in a dirt area that provided water in high pressure, thereby insuring that anyone that attempted to wash their hands there would be sprayed and standing in mud.

   c. Another shift supervisor started telling other employees that Plaintiff would be fired.

   d. Plaintiff was disciplined for the first time.

   e. Plaintiff, an avid fisherman, began getting phone calls stating "we need to kill fish."

Electronically Filed - Jackson - Kansas City - May 17, 2016 - 11:15 AM

f. The words "need to kill fish" were written inside the port-a-pot.

g. When Plaintiff reported the incidents to his superior and stated that someone was trying to scare him, his superior responded "I know you and this will not scare you."

31. In July 2015 Procter & Gamble hired another company to serve as manager of security, basically a liaison between Defendant and Procter & Gamble. A manager from the new company visited Plaintiff and Plaintiff shared with them the concerns with Gate 8 as well as the complaint made to OSHA.

32. In late August 2015 a new Procter & Gamble manager arrived. He visited Gate 8 and Plaintiff informed him of the dangerous and unhealthy conditions, giving a tour and providing details. Plaintiff also provided a copy of his 2008 report. The new manager stated that they needed to do something about the issues.

33. In September 2015 the new Procter & Gamble manager asked Plaintiff to provide a report of his work load. Plaintiff provided the detailed report on September 14, 2015.

34. In late December 2015 a new Securitas Account Manager was assigned.

35. Around that same time the Securitas second shift supervisor was promoted to assistant manager and began asking questions about the proper ways to do things at Gate 8.

36. In early January 2016 the new Procter & Gamble manager told Plaintiff that he was about to get budget approval to make the improvements needed at Gate 8.

37. On January 6, 2016 Plaintiff reported that a new female guard was not participating in training but spending much time on her phone.

38. On January 8, 2016 Plaintiff was advised through a phone call with Reagan Dixon that Procter & Gamble had requested that Plaintiff be removed from his position at Procter & Gamble.

39. Signs were posted at the entries to Procter & Gamble stating "No entry Enrique Gutierrez" and listing a description of his vehicle and license plate.

40. Also on January 8, 2016 Plaintiff asked for a copy of the job assignment change form. Plaintiff did not receive the form until February 11, 2016.

41. Plaintiff sent a request for a service letter to Defendant that was received by Defendant on January 29, 2016.

42. Defendant sent Plaintiff a letter dated February 2, 2016 that stated that he had violated policy through distribution of unauthorized written material in working areas. The document to which Defendant referred, and attached to their correspondence, was a handwritten draft of Plaintiff's February 24, 2015 email that Plaintiff had kept in his personal locker at Gate 8. Defendant's letter further stated that Defendant had tried to contact Plaintiff and that the refusal of an assignment is a company violation.

43. As of February 2, 2016 Plaintiff had not been offered another assignment and had not declined another assignment. In fact, Plaintiff believed that he had been terminated since he had not been assigned to another location.

44. On February 9 and 10, 2016 Plaintiff called his contact with Defendant to seek another assignment. On both occasions the contact stated that he would have to do some checking and call Plaintiff back. Plaintiff received no call offering an assignment.

45. Plaintiff called his contact on February 12, 2016 and was told that they had nothing for him at that time.

46. Plaintiff called his contact on February 16, 2016 and was told that they had nothing for him at that time.

47. Plaintiff called his contact on March 1, 2016 and spoke with another contact who said he would call Plaintiff back. Plaintiff received no return call.

48. Plaintiff called and left a message on March 8, 2016 but received no return call.

49. Plaintiff received a letter from Defendant on March 8, 2016 that stated that benefits ended on February 28, 2016.

50. On March 9, 2016 Plaintiff sent a letter to Ms. Dixon stating that he had called his contact several times to ask about a job assignment and each time was told that he would have to check and get back with Plaintiff.

51. Plaintiff was removed from his job assignment on January 8, 2016 and, notwithstanding his efforts to obtain another assignment, was never given another assignment from Defendant.

52. Plaintiff was terminated by Defendant.

## COUNT I – WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

53. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

54. 29 CFR § 1910.141(b) requires that all employers provide potable water for drinking, washing, cooking, etc.

55. 29 CFR § 1910.141(c) requires that all employers provide suitable and appropriate restroom facilities.

Electronically Filed - Jackson - Kansas City - May 17, 2016 - 11:15 AM

Electronically Filed - Jackson - Kansas City - May 17, 2016 - 11:15 AM

56. 29 CFR § 1910.141(d) requires that all employers provide washing facilities with hot and cold running water, or tepid running water.

57. 29 U.S.C. § 654 requires that each employer provide his employees a place of employment free from hazards that are likely to cause death or serious physical harm.

58. Plaintiff reported the violations regarding the restroom, running water, and safety concerns internally to individuals who had the authority to make changes in the workplace.

59. Plaintiff reported the violations regarding the restroom, running water, and safety concerns internally to an outside entity, OSHA, who had authority to investigate and implement changes in the workplace.

60. Following Plaintiff's internal and external reports of violations, Defendant retaliated against Plaintiff and ultimately terminated Plaintiff's employment.

61. Defendant's termination of Plaintiff was in retaliation of Plaintiff's reports of violations of law.

62. Plaintiff's reports of violations of law were a contributing factor in Defendant's decision to terminate Plaintiff from employment.

63. As a direct and proximate result of Defendant's unlawful acts of retaliation and termination of Plaintiff's employment, Plaintiff has suffered damages, including, but not limited to, economic loss in the form of lost wages and lost benefits, future wages and lost earnings, and emotional and mental distress.

64. Defendant's conduct was outrageous and was intentional or recklessly indifferent to Plaintiff's rights, thereby entitling Plaintiff to punitive damages in an amount that will punish Defendant and deter Defendant and others from like conduct.

Case 4:16-cv-00677-REL   Document 1-1   Filed 06/23/16   Page 10 of 11

WHEREFORE, Plaintiff requests that the Court grant him judgment against Defendants in an amount that is fair and reasonable, for punitive damages, for his costs and attorneys' fees, and for such other relief as this Court deems just and proper.

WHITE, GRAHAM, BUCKLEY & CARR L.L.C.

BY: /s/ Gene P. Graham, Jr.
GENE P. GRAHAM, JR.   34950
DEBORAH BLAKELY   47138
19049 East Valley View Parkway
Independence, MO 64055
(816) 373-9080/ FAX 373-9319
ggraham@wagblaw.com
dblakely@wagblaw.com

ATTORNEYS FOR PLAINTIFF